Good morning everyone. Thank you for being here. We convene what is probably, at least in terms of our format, an unprecedented Involvement of the Third Circuit, thank counsel on behalf of our entire Involved Court for their availability, and thank the District of Delaware in particular, my good friend Chief Judge Stark, for making a courtroom available for our use. We begin at this point with just some brief introduction and some protocols that we will follow. Conducting an Involvement of the Third Circuit, I will admit, is almost always, for Chief Judge, a little difficult in terms of the logistics. Not to suggest that my colleagues aren't a very orderly crowd at all times, but on the telephone, things are a little different. So we're going to have some time constraints here for everyone, and the protocol we will follow is the usual five minutes of uninterrupted time for each side. And then, I will probably go first in terms of answering questions, Judge Jordan will go next, and then Judge Porter. And the three judges who have taken the bench will do the first questions. At that point, I will turn to Judge Stee as the most senior of the judges to work on the code, and we will go in terms of order of seniority. Each Q&A segment, per judge, will last three minutes. I am not going to be absolutely rigid about that, but we will be fairly strict in terms of that three minutes. Obviously, from the participation of 16 judges, this will be most probably a lengthier involvement than our usual one hour period of time. It's only appropriate that every judge be given an opportunity to ask questions. At this point, we will begin with an uninterrupted five minutes, and I will turn it over to Mr. Donahue. Good morning, Chief Judge. Nice to meet you. Keith Donahue for Appellant Malikna here. I would ask to reserve five minutes of my time for rebuttal, please. Your Honor, on first blush, the issues in this case might appear almost tactical. And if we were taking a purely policymaking perspective, that characterization might be fair enough. But from a jurisprudential perspective, each issue before this en banc court implicates fundamental constitutional imperatives. And on the first issue, that imperative is the constitutional separation of powers. In particular, what's at issue is the need to safeguard against improper encroachments on the Article III court's authority to say what the law is, as is uniquely there and no other branch's province. In this case, upholding that judicial prerogative controls the construction that we have put forward of the career offender guideline provision, and specifically its definition of the term controlled substance offense. Now, as I said, the second issue also implicates a fundamental constitutional imperative, and that is the right to trial by jury. The right, as Justice Scalia put it, to insist that the prosecutor prove to a unanimous jury beyond a reasonable doubt every fact essential to conviction. And vindication of the jury's fundamental role in American constitutionalism means that when the government fails to prove or even charge a fact that's essential to guilt, then a conviction cannot stand. I'll turn in some greater detail to the first issue before trying to revisit the second issue briefly. This first issue arises, as Your Honors have read, in the context of the career offender guideline. And for my client, Malik Nasir, that guideline has the effect of increasing his sentencing range from about 10 years to close to 20 years. Now, the issue ultimately turns on the relative weight to be given an agency's interpretation of its own rule or regulation, and specifically how much weight the agency interpretation bears now that the Supreme Court in Kaiser v. Wilkie last June clarified the applicable doctrine to some degree. The rule at issue, the agency rule at issue, is section 4B.1.2b of the sentencing guidelines, which is a definitional provision that describes what kinds of drug offenses will qualify a defendant for the severe career offender enhancement. And it offers that definition by saying that a controlled substance offense means an offense that prohibits, and then it lists any of six forms of drug trafficking. Distribution, manufacture, import, export, dispensing, or possession with intent to do any of those things. That is the sum total of the definition adopted as the rule to be applied in determining whether someone is a career offender. Now, the agency interpretation of that rule that goes beyond the text of the rule itself purports to interpret the enumeration I've set out to include as well attempts or conspiracies to commit those offenses that are listed. Unlike, as we know, in 1994, this court held in United States v. Hightower that this interpretation was an authoritative construction of the rule at issue. The problem with Hightower is that it really is a decision from another era. And where a confusion on the application of our deference appears most manifestly is that it describes the commentary as an expansion of the text of the guideline, an expansion. It goes beyond what the guideline did. So, what Kaiser has now shown us is that, therefore, this commentary cannot be found because an interpretation will only be given weight to the extent it addresses itself to some point of genuine ambiguity in the text of the guideline. And it satisfies a number of additional factors as well. In this case, what's critical is that there is no ambiguity in Section 4B1.2b as to whether attempts or conspiracies are covered. To turn very quickly now to the second issue, I think that what should be front of mind here as we start, specifically as appellate practitioners and appellate judges, is how rare it is for cases to go to trial in our federal system. I believe about 98% of cases are settled by guilty plea. So, the only issue presented by Malik Nasir's appeal is what relief is due a defendant on direct appeal from a trial when the government failed to prove the knowledge of status required by rehafe. There are clock watches on the uninterrupted five minutes. I'll turn to questions. And my question relates to the rehafe issue. In this case, about the Lono Prong 3 or about the Lono Prong 4, from looking recently, and once again, I should brief, it seems to emphasize 3. But even if we assume arguendo that substantial rights were affected, your client doesn't get relief unless we further conclude that any error seriously affected his trial's fairness, integrity, and public reputation. Does the Prong 4 issue require that we look beyond the trial record? As I read the puppet, it seems to acknowledge that. That applies on a case-specific and fact-based basis. But since public faith in the judicial system can cut both ways, this may also be an inquiry that the government wants to address. I think in some types of controversies, Prong 4 may look beyond the trial record. In Puckett, the decision your Honor referenced, the claim brought by the appellant had to do with a breach of a plea agreement by the prosecution. And I believe the discussion in Puckett notes that by its nature, that kind of issue is going to require an awful lot of probing into the record to see was there a breach, what was the significance of the breach. And if we think about it, it's not unlikely that a claim like that ends up being resolved in 2255 because the record's not enough. So that sort of issue, Prong 4 may look to evidence that it's not a trial. Now, another major category of cases where resort can be had to non-trial record is plea cases, at least an awful lot of them, under Bond and Dominguez-Benitez. In those situations, it may be that Prong 4 does have that broader perspective on the record. But where it does not have that broader perspective is on direct appeal. And to simplify my client's claim for just a moment, a direct appeal challenging the sufficiency of the evidence. And in many ways, Mr. Nestia brings a sufficiency plus claim, if you will. Because not only was there insufficient evidence, an essential fact also wasn't even charged in the indictment, and it wasn't submitted to the jury to be found. But even putting aside those additional errors, a core error is that insufficient evidence of an essential element was presented. Now, this court has had no trouble in a good four to six decisions over the last 15 years working through Prong 4 very quickly upon ascertaining that evidence was insufficient. It does have a pretty rich standard, of course, and the question is whether any rational jury could have found each fact proven beyond a reasonable doubt. We'll turn to Mr. Jordan at this point. Jordan? Thanks. Speaking on the race issue then, Mr. Donahue, let me ask you your understanding of the state of the record, that is, the trial record. Was there any evidence of the knowledge of status element put in at trial? In my opinion, there was not, Your Honor. The government has argued otherwise. Right. Well, back up your opinion. Explain why the stipulation itself is not some evidence. The key reason the stipulation is not evidence is that it's a legal instrument. It's something that a client signs on the advice of his attorney. So, you know, there have been assertions made in the years since Rehave. Well, he had the conviction. He probably remembered that. Sure. Sure, he probably did remember he had the conviction. What the stipulation goes nowhere toward proving is whether he knew it was a felony conviction. And the fact that he's now stipulating at trial it was a felony conviction means nothing more than that he relied on the advice of his attorney to enter that stipulation so as to prevent evidence of the prior from coming in. So I would submit it's incoherence to regard the situation as evidence, given the role of a lawyer in advising it. Okay. Now, cases, there's a lot of cases that have been coming out about Rehave and cases like Hollingshead out of the eighth and Benamor out of the ninth. Courts have said that if the case before were retried with the proof that the defendant knew he was a person prohibited, proof that everybody conceded was available, just nobody knew you had to use it, the outcome would be the same as at the original trial and, therefore, substantial rights weren't affected. What's the problem with that reasoning? It's profound. It's profoundly problematic reasoning in that it supposes that review of prejudice, the third prong when we're on plain error, is some sort of free-form inquiry by appellate judges into what the truth is. That cannot be further from the proper idea of what courts do when they review for prejudice. They ask whether in the case before that was presented to the jury whose verdict is now on appeal, whether if the error hadn't occurred in that case, it would have been different. Right. So imagine that in some... These judges are all saying, well, it wouldn't have been different. But let's leave that aside for a second. In the few moments I have left, let me ask you a prong four question, and it'll have to be quick. Would it do more reputational damage to the justice system for us to vacate the conviction of a career offender on what, as you noted at the beginning, might look like a technicality? I think Chief Judge Smith was getting at this, but I'm not sure I heard the answer. I'm sorry, the career offender? Yeah. The PSR shows this man, at least in the initial calculations, to have been a career offender. But leave that fact out. Would it do more reputational damage to the justice system for him to be let go on this thing, which you rightly noted might be viewed as a technicality? From a pure policy-making perspective, I wanted to emphasize. But I don't think there's much of an appearance of any sort of miscarriage for the career offender in Hanson's list. Frankly, it's a draconian penalty in this case. I've refrained from bringing those equities to the court's attention, but far too long, in a sense. Malik Nasir should not be a career offender. I believe most Americans would agree with that. So from that sort of perspective, I don't think there's really much cost at all to this. Thank you. Following up on Judge Jordan's question about the underlying facts that weren't proven, in Mr. Nasir's case, we know from the PSR that he was sentenced to 29 years of imprisonment over four different felonies, and actually served about seven years in prison. So how could we say, unless we ignore those facts, that he wouldn't have known his felon status? Well, you should say that because you do have to ignore those facts, because the government ignored those facts at trial. Now, the government has certainly spun out a notion that that's Mr. Nasir's fault, because he entered an old chief institution. That's not a fair – it's a good-faith argument, but I don't believe it's a sound argument. It was neither party's fault. Both parties were proceeding at that time on what they understood the law to be, and there was nothing stopping from the government – and it had, at that time, a crazy idea to do so – to have the stipulation provide that Mr. Nasir knew of his felon status, and if these facts about his prior history are correct, he probably would have stipulated. So it's just not Mr. Nasir's fault. And because the government ignored it, and because Mr. Nasir did insist that every fact essential to guilt be proven to a jury, the ball falls in our favor here. I understand the old chief argument. It's not that anyone faults Mr. Nasir for making the stipulation in the first instance, and getting the shield that it provided. The argument is that now, after the facts, after the case, he is now deploying that stipulation as a sword to prevent a review in court from looking at this evidence that we all know to be true. But I don't understand why we should say he's looking at the stipulation, using it as a sword, when it was a mutual stipulation. It was something the government – as it happened in this case, the government took the lead. That all goes to call three. We're talking about the discretion that we're now exercising on the floor, and whether we're allowed to look at these facts outside the trial record. I couldn't find a single case or rule that prohibits a review in court from looking outside the trial record. Do you have any? Well, there have been several district court decisions that have held that in the rehave context, one by George Hornak in the Western District, a case called Montgomery, a Southern District case by now Circuit Judge Sullivan called Sepulveda. They both held that. I think you're right. There aren't any circuit decisions that have held that about rehave. However, though, I think if you look at a case like Sullivan v. Louisiana, a Supreme Court decision, you look even at a case like United v. Young, the Plain Error decision, and I think those opinions treated as almost too clear for words. But, of course, they're looking just at the trial evidence because they're reviewing the authority of the verdict. Thank you. Thank you very much, Mr. Donahue. Judge McKee. Thank you. I didn't have any questions initially, but Judge Jordan's question in the dialogue that's following is more of an observation than a question. Any better? Speak a little more slowly, if you would, Judge McKee. Sure, sure. Directly into the telephone. Okay. I'm wondering if Mr. McNulty could just comment on this observation that I have arising from the dialogue that's already happened. Is that any better, Chief? Can you hear me okay now? Yeah, you're better. Okay. Thanks. Thanks. And that is to the extent that there's somewhat understandable discomfort here at prong four of Orlano in doing what might be viewed as a calisthenic exercise, dancing on legal technicality, doesn't that necessarily follow from the court's mandatory precedent of we hate? I mean, we didn't make this suit that we find ourselves in. We hate held what it held, and the court must have known what it was doing when it held that. That's the law of the land. And I'm wondering if what we're looking at with this tension, this discomfort under prong four, is the necessary result of we hate holding as it did. If you could just comment on that. The necessary result of what, Your Honor? I missed your final part. Of we hate holding what it held. Is this a necessary result of we hate is what I'm asking prong four and the discomfort. Well, I do think that if this speaks to the question that we hate does create a situation that's analogous to any other situation where once a case reaches appeal, it turns out there was no proof of an essential element. So it is the necessary result of we hate in the same sense that this court's decision in the United States, the RETOS, R-E-T-O-S, was the necessary result of an intervening decision clarifying a structuring statute. And frankly, in that context, it seems like no one batted an eyelash to award relief. The other aspect of isn't this the necessary result of we hate that I do think has been lost for some reason in a lot of the circuit opinions is a pretty remarkable statement by Justice Alito in dissent where he says in we hate, he's frustrated by this, but he states it, most defendants whose cases remain on direct appeal will be entitled to a new trial. I'd like to point out two limitations inherent in that short sentence. On direct appeal, he's talking about direct appeal cases, and new trial, i.e. a defendant who went to trial the first time around. Your honors know better than I do, but I suspect there can't be more than two dozen such cases pending before this court right now. So I think it is the necessary result for those cases. I think the justice who is perhaps most disenchanted by the decision saw that as precisely the result. I hope that answers your question, Judge. It does. Thank you. Thanks, Chief. Thank you very much. And we will turn then to Judge Ambrose. Thank you. The Second, the Fifth, and the Seventh Circuits have recently decided the second issue that we have before us, the rehafe issue, on the fourth prong. So that means we have discretion. Our court has discretion. And it seems pretty clear from the entire record that Mr. Messier had knowledge of his felony status. And if that's the case, including looking at things like the PSR, etc., if there's an error, how does it seriously affect the fairness, integrity, or public reputation of the proceeding? It profoundly affects it because it undermines the right to trial by jury. We're talking about what we believe to be the truth, what Mr. Messier didn't dispute, but what also just wasn't part of the case before the jury. So this court now says, no matter. We know this could be proven. It doesn't matter that the jury wasn't asked about it. That's a big problem. And it's what I was trying to allude to when I spoke about how these issues may seem technical, but they're not. Because the moment you begin to erode the jury trial right, even in this first step toward it, that was a paramount concern of the framers, and it's been a paramount concern of the Supreme Court ever since. The concern that the jury trial right can be eroded, not just abolished one day to the next, but it erodes. And for appellate courts to stand in for a jury, which, because of a change in the law, simply never addressed the pertinent question, I believe that that does erode the integrity of the American judicial system, given its fundamental reliance on trial by jury. I could ask other questions, but I'll pass. Thank you very much, Mr. Chambrow. Thank you, Garris. Thank you, Chief. Now I'm referring to the Rahafe claim. Does any authority hold that we can't look outside the trial record at the fourth prong of the plain error test? After all, I took a look at Cotton again, the Supreme Court's decision on Cotton, and it seems that they did exactly that. No, respectfully, Judge, I think Cotton is an important decision to consider, but the evidence that Cotton's talking about was before the jury. In Cotton, the evidence of drug quantity wasn't alleged in the indictment, but all of the evidence at trial overwhelmingly and uncontrovertedly showed the necessary quantity of drugs. The jury saw it. It wasn't in the PSR. That was what the trial was about. So it happened the jury wasn't asked to find quantity because of the change in law, but all the evidence showed it. And that's what led the Supreme Court, Justice Rehnquist, to remark acidly in Cotton that the real impact on public reputation would be if we granted release. But that's because it was in front of the jury, and that's in line with the entire doctrine of harmless error review. Courts can put themselves in the place of the jury and, looking at the particular trial, see what a jury necessarily would have found. But that's different from looking beyond the trial to speculate about what some new jury would find. All right, but is there any authority that says we can't look outside the record at the fourth prompt? Well, I think the cases that I... I'm not aware of a Supreme Court stating do not look beyond the trial record for the fourth prompt. I don't think it's squarely addressed the issue. I do think the Sullivan v. Louisiana opinion and the United v. Young opinions point to that rule. There are the two district court decisions that have said that, and those district court decisions have both stated authoritatively. That they've canvassed the law closely, and they see no Supreme Court authority authorizing looking beyond the trial record on prompt four. So all the circuits that have done it, as your Honor pointed out, at least three now, are venturing off on uncharted territory. Okay, thank you. Thank you, Judge Garris. Judge Hardiman. Thank you. I have two quick questions. First, counsel, are you asking for a per se rule here? In other words, any violation of the principle established in In Re Winship automatically entitles you to a new trial without regard to exercise of judicial discretion at prompt four of ALANA? Could you just repeat for me any... what was it necessarily entitles me to release on point? I missed that part of your question. Any violation of the In Re Winship principle. Failure to prove all the elements of the offense beyond reasonable doubt. Is that an automatic per se entitlement to a new jury trial without regard to any judicial balancing at prompt four of ALANA? I would say there does not exist today such a per se rule. I would submit it would be sound judgment to establish one just as... although let me clarify what I mean by per se. I mean the same sort of rule the United States Supreme Court announced recently in Rosales v. Morales, where it said ordinarily error in calculating sentencing guidelines range will call for an exercise of discretion under prompt four. I do think that would be a sound rule. Ordinarily, a failure to prove an essential element beyond a reasonable doubt satisfies prompt four. And that's the practice this court has followed in Castro and Jones and Ritos and Hainwood. So this court's been true to that approach. There's no per se rule embodied in the law at this point. All right. Thank you. And if you win here, what do you intend to show on remand to get a different result? On the rehase claim, right? I'm just not sure I'm staying on board here, right? Correct. We're talking about the second issue. I think the indictment has to be dismissed on the second claim because it's infirm. It doesn't allege an element of the offense. Now, I will say this. I can't offer a final and authoritative view, but Section 3288 of Title 18 appears to give the government six months to bring a new indictment regardless of statute of limitations problems. So... So assuming the government does that... I don't expect that further, but it might be a new prosecution is what happens on remand. All right. And then what do you intend to show on this intent issue that your client, the knowledge issue your client did not know that he had been convicted of? I hope to address it in combination with all the other features of the case to try to see if a sounder resolution of the entire matter can be reached for misdemeanors. Whether or not he can mount a defense on knowledge of status, the necessity of proving it at least as one more dimension to the case. And there's also the fact that it's now quite a few years later since the trial. And as it happens, I think Mr. Netzer does have some points to make about some rehabilitation he's achieved. So what I'm interested in the first instance on a remand is seeing what common grounds there might be with the government on how to proceed. Thank you, Mr. Donahue. Just for context, and so everyone can understand the challenges of proceeding of this kind, we've now more than exhausted what would have been the 25 minutes allotted to counsel for this side. So you understand why we're operating and trying to operate in the manner in which we are. Judge Greenaway. Thank you, Chief. Counsel, what I wanted to know is one of the government's arguments is the difficulty in proving knowledge at trial. So let's say that Netzer's trial took place after Rehoboth, just for the purposes of this question, and Netzer wanted to stipulate to his prior felony conviction but not to his knowledge that he was a felon. In that context, what could the government use to prove knowledge at trial, generically not with regard to Mr. Netzer specifically? Well, you know, that's a very new question that I'm sure will have to be answered. My instinct is to say they could introduce evidence that he served in prison at least 12 years in one day, period. If that would suffice. If somehow the defense opened the door to further, perhaps there could be further evidence. But I think that would be the basic evidence that would be allowed to get in if there were no stipulation of knowledge of status. I have one follow-up on Hunsberry. Hunsberry suggests that a way to extricate ourselves from this problem of what record we can consult on plain error review is for the district court to merely take judicial notice of prior felony convictions. Would doing so, in your view, run afoul of RAFE? Yes, and just of even older rules in the law. I find that kind of a shocking suggestion, Hunsberry, the decision that you could take judicial notice of what period of time a person served in prison from a commitment order, which of course may not have been carried out all the way through. I know as well that the Seventh Circuit in May, the more recent decision, noted Hunsberry's rationale, and while not rejecting it, I would say pointedly did not embrace it. All right, thank you. Thank you very much. We'll turn to Judge Schwartz. Thank you. I wanted to ask a quick question about your first issue, the guidelines issue, and then a question about the RAFE issue. With respect to the technical issue for construing the meaning of the sentencing guidelines at issue, your analysis would say, I would think, that the definition of a controlled substance offense would not include conspiracies or attempts to commit the offense, and that would not only include the predicate qualifying offenses, but since it's the same words, the actual instant offense that was the subject of the conviction that led to the federal sentencing. If that would be the analysis that you would follow through the logic tree, would we then be ignoring the congressional clarity that conspiracies and substantive completed offenses are supposed to be subject to the same penalty, as well as sort of the, I'll call it enabling, but that's probably not an exact word, the statute of 994, which directed the sentencing commission to be sure that the career offenders were sentenced at the highest level. Put differently, would your definition run afoul of two clear congressional enactments on how to treat controlled substance offenders? No, I don't think it would. With regard to the first point, that defendant convicted of conspiracy in violation of 846, I do accept that my argument means that's no longer a career offender predicate. However, that doesn't mean conspiracy is now being punished more lightly than substantive offense. The conspiracy offense would still be subject to guideline 2E1.1, and the sentencing range would be the same. All that's changing is the extent to which the conspiracy infant or predicate offense contributes, if at all, to deeming the defendant one who needs to be marked out for a sentence near the very top of the statutory maximum. To the extent there's some tension there, in terms of a conspiracy might not count as much when it's the third offense. That is, of course, not only easy for the sentencing commission to rectify, but in fact something the sentencing commission has published its intent to rectify as soon as it has a quorum. And so to the extent that tension is of concern to the court, which I can understand it would be, it nonetheless is not worth just holding off all the significance of the broad deference doctrines that Kaiser has now clarified to save this single rule that can be saved in no time anyway. Now with respect to 994H and the idea that certain defendants should be career offenders, now my position isn't contrary to that at all, because that directive doesn't actually identify conspiracy as a predicate, and so it's really only ever been the commission that has decided conspiracy should be treated that way. And courts upheld that determination, but it wasn't directly mandated by 994H. Schwartz, unfortunately we've used up almost three and a half minutes for the first question. Perhaps there will be an opportunity. That's fine, Chief. Thank you. Judge Krause. Good morning. I'd like to return to the Rahafe issue and specifically the evidence that we can consider. In the Netter case, the defendant there had made the argument that to rely on overwhelming record evidence of guilt the jury did not actually consider would be to dispense with trial by jury and allow judges to direct a guilty verdict on an element of the offense. It sounds to me like you're making a very similar argument. And so two questions. If the reviewing court can consider uncontroverted evidence that the jury actually did not, then why does it matter for these purposes whether that evidence was introduced at trial or at sentencing? And relatedly, what, if any, difference is there regarding the fairness, integrity, and public reputation of the judiciary whether we uphold a conviction in a situation where the jury did not actually find each element of the offense proven beyond a reasonable doubt versus where the government did not prove each element of the offense at trial beyond a reasonable doubt? It is a quandary. My perspective on it simply has to be that it's settled by precedent, right? So you do have, as you said, a Nader and a Pioneer review even before that, and Johnson, the notion that, okay, even if a jury wasn't instructed on an element, if there was evidence there at trial. I do believe the evidence at issue in Nader was at trial. I believe it was that the defendant hadn't signed a tax return, and it was kind of obvious that the income he didn't disclose was material, but the jury wasn't instructed to find materiality. Forgive me if I'm wrong, and I'll check it and correct myself if I am, but I thought the evidence in Nader was before the jury. You are correct there. You are correct there, but the court says that the jury notes that the jury did not actually consider it, and so if it didn't actually consider it, my question is, why does it matter if we're looking to the right to trial by jury for purposes of prong for and reputation from judiciary whether the uncontroverted evidence then is from trial or from sentencing? If the jury didn't consider it in either event? Well, I think the notion is that it's more palatable to attorneys and to the public to think, all right, the jury saw evidence X, Y, Z, A, B, and C. The judge failed to tell them what they had to find, but we know from looking at this whole record that this jury, based on the evidence that was before it, would have found that, and it's just too tactical not to throw out a conviction over that, but when the evidence wasn't even before the jury at all, that's a much further leap. Oh, if the jury had seen this evidence it didn't see, it would have been convinced. It's not illogical, but it takes things too far away from the jury, and frankly, I mean, it's not as if the decision in Nader is beyond criticism. Justice Scalia wrote a blistering dissent there, but obviously it is the law, and I guess the line that just has to be drawn is that we're willing to accept after-the-fact notions about what a jury would have made of evidence it did see, but not to speculate about what it would make of evidence it never saw. Thank you very much, Mr. Donahue. Judge Restrepo. Thank you, Chief. So, Mr. Donahue, just elaborate on the discussion you had with Judge Krause and Judge Jordan's original question. If I understand your position, under the Fourth Prong of Olam and this Raheith issue, your position is that we're undermining the individual's right to a jury trial, and that really speaks to the essence of the reputation of the judiciary. Is that correct? Yes. And by not presenting this evidence to the jury and allowing appellate courts to go outside the record, we're really eviscerating the right to a jury trial. Is that your position? Yes, that's it, Your Honor. It really is about the virtue of jury trial and upholding its sanctity. I understand your position. Thank you, Chief. Thank you very much, Judge Restrepo. Judge Stevens. Good morning. So I'd like to take you back to the Hightower-Kaiser issue, and I know you've got your textual arguments about whether there is an ambiguity here, but let's talk more generally. What role should the rule of lenity play in interpreting a guideline? Does it apply only if there's ambiguity, or do we apply it as a matter of constitutional avoidance in determining whether there is an ambiguity in the first place? So with that second option, if one were to apply the rule of lenity as a matter of constitutional avoidance, you mean you automatically interpret the text in favor of the defendant without looking beyond the text? Right. How do we use it? At how early a stage do we use it in deciding whether the text has any ambiguity? Do we use it only at the very end? Is it tiebreaker? Help me to understand where you think lenity fits in to the Kaiser process. Well, I think if it fits in at all, it would be at the very end. And I think the question points up a very interesting strain of language throughout, I think, all of the opinions in Kaiser, where the phrase genuine ambiguity, as used in Kaiser, sounds an awful lot like grievous ambiguity of the kind said to, finally, at the very end of a process, call for an application of the rule of lenity. So it's arguable that there will no more often be genuine ambiguity in a guideline provision than there is in a criminal statute calling for the rule of lenity. It comes in late in the process. Winstead, the D.C. Circuit Division, does drop a footnote saying they find this a complex problem. They're inclined to think the rule of lenity maintains some role, but they don't go further than that. Thank you. Thank you, Judge Grievous. Judge Meade. Good morning, counsel. Sticking with the Raheef issue for one moment, I'd like to return to United States v. Huntsbury and allow you to just discuss a little bit more your concerns with that decision. As I read Huntsbury, it builds on two principles that are probably not all that controversial. The first, that we may judicially notice facts that are not subject to reasonable dispute. And the second, that it's well settled that courts may judicially notice court records as evidence of judicial actions. If those are the predicates of Huntsbury, where do you see a problem with that holding? And if you could just elaborate on your concerns with that decision. Could you just tell me the second predicate you said was uncontroversial? Absolutely, that courts may judicially notice court records as evidence of judicial actions. Right. I think, actually, that gets to it. Sure. Perhaps, perhaps, an arguendo, a court could look at a certified record of conviction and infer from it that a defendant was, in fact, sentenced to a term of 13 months or something. Although, of course, in Pennsylvania, it wouldn't be uncommon to see a judgment that says 9 1⁄2 to 23 months. In either instance, the certified conviction does not itself show what period the defendant served. That would be kind of obvious in the Pennsylvania example I'm giving you. But, in any case, maybe he was pardoned. Maybe the law changed. Maybe who knows what happened. What the certified conviction proves is what the court ordered when it pronounced judgment, but not necessarily conclusive evidence of what period of time a defendant spent in custody. And that notion really is the one that underwrites what everyone says would be the determinative fact and relief. If someone spent 12 months and a day in prison, they wouldn't forget it. I think it's a step too far to infer that real-world fact from the judicial pronouncement at the time the sentence was handed down. Not to mention there could be other materials in the judicial file later changing the sentence. So it's too far to go. Thank you, counsel. Thank you, Judge Meade. Judge Fitts. Yes, good morning, counsel. I have a question in the rehafe prong four space. I'm going to start with two assumptions as to how I'm thinking about this. Please feel free to challenge those if you think they're wrong, and I'm going to ask it. My question goes to the consequence. The first predicate is that even if a criminal defendant is successful in proving the first three prongs of rehafe, including the third prong, prong four is still a discretionary prong for courts to consider. And then the second predicate is that at the time of this trial, the evidence was sufficient for under governing law. And so I guess under those two predicates, I guess my question comes down to this. If we were to exercise discretion under prong four in this instance, what's the consequence for prosecution going forward? Doesn't that require prosecutors to put in evidence of facts that had never been required for a conviction before? In a very narrow cases where between the time of verdict and appeal the law changes, someone's ox is going to be gored. To that extent, you're right. Prosecutor now has to put on facts it didn't have to put on before. But the alternative is to lock up a defendant who insisted on his right to have the prosecutor prove every fact, and then the prosecutor didn't. It might not have been the prosecutor's fault, but it was a violation of the law. So all I can say in response to that is whatever consequence there is for the prosecution, the consequence is greater for defendants in light of our jury trial right. I would again point the court's direction to the 1993 Ritos decision. No, no. Ritos is what prompted this question. It focuses mostly on prong three, I think, and then goes to prong four. And I guess my pushback to that is counsel could have raised this rehash issue earlier. I mean, and we wouldn't be at plain error, and there would be no reason to consider this discretionary component to prong four. So I agree with you. Someone's ox is going to be gored. I think that's a very appropriate metaphor. The question is whose, and it strikes me as if this issue were alive, why doesn't plain error tilt the balance and put the onus on a defendant to raise an issue that goes to the construction of the statute as opposed to the government to put on proof that had never been required before? Well, in this case, it would have been a frivolous argument for the defense counsel to make, given the state of the law. By contrast, if the government had wanted to say, hey, we're a little worried, would you mind just stipulating to knowledge of status, maybe the judge would have shut that down, but the government could have tried it. So I'm not sure that the defendant had fewer options at his availability than the government did. The other point about prong four, and of course I want to honor prong four and recognize that it has a role to play, but I think one interesting case that might be worth looking back to put it in a little bit of a historical perspective, slightly a field, but I do think it's the Kodiakus case, 1946 case, originally talking about what it means for error to be substantial. And that was before a lot of, it's a while ago. But what you get when you read from that is that once upon a time, convictions were being converted because, you know, the attorney who signed the indictment didn't put in his middle initial or something like that. That was the kind of technical problem that motivated what today is our plain error jurisprudence. Thank you very much. We're well over time. Thank you. Sirica. Thank you, Chief. I have a question with respect to an answer you gave to Judge Hardiman, and I'm a bit confused. Assuming we think that you are correct on Rahif, did you say that it would be legal error for us to say that the only remedy he would be entitled to is a new trial, or did I understand you to say that dismissal would only be the remedy that would be available? I'm glad you, I wouldn't go that far now, Judge Hardiman. I would say my take on it is that the proper remedy would be dismissal. But if I am missing a basis to order a retrial, it is not a matter I've meant to put forward an authoritative opinion on. So it may be that that's correct. Thank you. Thank you. Judge Rendell. Yes, counsel. The government makes much of the fact that Keysord didn't overrule Stinson. Can we overrule Hightower just relying on Stinson? Yes, the en banc court could. What reasoning in Stinson would help? Sorry, one more time, Your Honor. What reasoning in Stinson would cause us to say, is that if commentary is, quote-unquote, inconsistent with, end quote, the rule, then it has no authority. This commentary is inconsistent with the rule for the reasons that Your Honor and my colleague and I have been arguing for many months now. Now, Stinson was decided in another era. It's not surprising that Hightower overlooked that. Lots of courts overlooked that. That's what led Keysord eventually to admit we, the Supreme Court, had sent some mixed messages. The rule announced by Stinson is simply, if the commentary is inconsistent, then it's without force. And if it's merely explanatory, it is inconsistent because it's contrary to the text. Hightower may have focused too much on what is viewed as a consistent policy. Okay. Quick question. What if the government fails to prove that a gun traveled in interstate commerce? Do we look at prong three or four and say, well, of course, it can easily figure that out? Or is the defendant entitled to a new trial? I think the defendant is probably entitled to a new trial, but I would draw a distinction between that hypothetical and this one, in that the element at issue here is what the Supreme Court termed in Re-Hate the crucial element. It is the mens rea of the offense. Whether maybe there could be a different rule of a failure to prove interstate commerce or jurisdiction element, I think it's beyond the scope of this case. But if you ask me now, I think there wouldn't need to be a new trial if the government failed to prove every essential element beyond a reasonable doubt. Thank you. Thank you very much, and thank you, John Hugh, we will head back and rebuttal. Thank you, Judge. Ms. Cloud, my understanding is that you were making the whole five-minute initial uninterrupted presentation. That's correct, Your Honor. All right. The fact that we have two counsels speaking to one issue and another counsel speaking to another, what I am going to ask is that Mr. Kravitz join you after the five-minute interrupted time so that we don't waste time going back and forth, and you're available to answer whatever questions my colleagues have. Thank you, Your Honor. That makes perfect sense to us. Good morning, Mr. Chief Judge, and may it please the Court. Whitney Cloud for the United States, thank you so much for the honor of allowing me to appear before the En Banc Court. I will address the guideline interpretation issue today. My colleague, Robert Kravitz, will address the record on plain error review post-ray haif. Twenty-five years ago, this Court held that the Sentencing Commission's interpretation of controlled substance offense within 4B1.2, as included in co-defenses, deserves deference. That decision, the high-power decision, drew on symptoms in the United States, which analogized commentary to the guidelines as akin to an agency's interpretation of its own legislative rules and held such commentary was authoritative if it did not conflict with the guideline it interpreted. The Supreme Court's decision last term, in Kaiser v. Wilkie, clarified the step the Court must take in reviewing an agency's rules, but it didn't overturn Stinson or reject agency deference when properly deployed. Deferring to the Sentencing Commission's interpretation of its own guidelines is as proper now, post-Kaiser, as it was in high power. When interpreting a guideline like Section 4B1.2, there's a need to start with some grounding principles. Congress created the Sentencing Commission to promote uniformity and predictability in sentencing. The Commission does that through the Guidelines Manual, which contains guidelines, policy statements, and commentary. The Commission includes commentary like Application Note 1 to clarify how a bare-bones guideline should be interpreted, and it often does so contemporaneously or when differing opinions among courts demonstrate interpretive confusion. But there should be no confusion with respect to this guideline because including incoherent offenses is the right reading when taking into account text, structure, purpose, and history of 4B1.2. This reading is consistent with the text, giving meaning to the term prohibit. It better accounts for the structure of the guidelines, including the drug offense section in 2D1.1. It reflects the broader purpose of the guidelines in promoting uniformity and in punishing the conduct, not the charge. And it adheres to the long-standing and consistent history of the definition. Mr. Nassir's textual reading, like that of the outlier opinions in United States v. Winstead and United States v. Havis, takes an unseemly narrow view of the text and rejects all other textual indicators and completely rejects context. But even if this court credits Mr. Nassir's interpretation as an alternative one, then the court should conclude that 4B1.2 is ambiguous. Deference to the commission is still then appropriate. That is because Application Note 1 presents a paradigmatic example of good agency guidance meriting deference, and Mr. Nassir makes no argument to the contrary. Regardless of the approach the court takes, the simplest answer here is the right one. The court should adhere to Hightower and uphold the career offender designation in this case. Mr. Nassir's case, of course, poses another question for this circuit, and that is what evidence to consider on plain-air review of a defendant's challenge to his 922G1 conviction post-Ray Haif. We ask this court to join the overwhelming weight of circuit authority and to uphold Mr. Nassir's conviction on plain-air review. Three interrelated concepts compel that conclusion. First, plain-air review requires the defendant to demonstrate the probability of a different result. Second, where a defendant contributes to an error as here, that's relevant to the prejudice determination. And third, as many courts have now held, the entire record for this error should include the undisputed facts of the defendant's prior conviction and sentence. In Mr. Nassir's case, that is a prior conviction for the identical felony offense for which he served almost seven years in prison. Mr. Nassir cannot demonstrate prejudice to his rights and certainly not a fundamental miscarriage of justice. Mr. Nassir invoked the old chief stipulation to preclude the government from presenting the very evidence that he now thinks was necessary to convict him at trial. In taking such action, Mr. Nassir already received the benefit of his bargain. The government was unable to present any prejudicial information about the name or nature of his prior conviction. But having made that election, Mr. Nassir cannot now show that it fatally prejudiced his rights, particularly where he has yet to meaningfully explain how he would have contested his knowledge of status as a felon. Allowing Mr. Nassir to prevail on his claim would be taking an unduly narrow view of prior Third Circuit and Supreme Court case law. Consideration of evidence beyond the trial record is necessary here to meaningfully determine whether the results of the proceeding would have been different absent the old chief stipulation, as well as whether there exists a miscarriage of justice when a defendant's strategic choice occasions the very failure of proof that he challenges on appeal. Like the 2nd, 5th, 6th, 7th, 8th, 9th, and 11th Circuits have already found, for this unique context of trial, sandwiched between old chief and Ray Haise, plenary review should not afford relief. We ask this Court to affirm the judgment of the District Court. Thank you very much, Ms. Cloud. In the interest of time, I will defer and turn to Jenny Jordan. Thanks. First, just to try to get the facts straight, and this is about Ray, so this is for Mr. Kravitz. Ms. Cloud just said that Mr. Nassir served 7 years for the same offense. I'm looking at the PSR, page 10. It says he was sentenced for intent to possess cocaine with intent to distribute in Virginia, and I'm assuming that's the offense she's referring to. The sentence was 7 years, but it also says immediately thereafter, suspended after 1 year. Am I correct that he did not serve 7 years, but that it appears from the record, the PSR, he served at most 1 year for that offense? Your Honor, may it please the Court, Ms. Cloud is referencing the defendant's prior conviction in the Eastern District of Virginia for being a felon in possession of a firearm. That is at paragraphs 67 to 70 of the PSR, and that's the conviction for which the defendant served 7 years. Okay. Now, as to the question of whose ox is gored, as Judge Phipps and Mr. Donahue were discussing, I'd like you to comment on something from the Johnson case. In Johnson, the Court was presented with the question, when is an error plain? The government specifically argued it should be judged at the time of the trial, and the Supreme Court said, no, we disagree with that. We think that the petitioner defendant's got the better argument. It's to be judged at the time of appellate consideration. Since the government has the burden of proof, doesn't the Supreme Court's instruction that plain error is judged at the time of appellate consideration necessarily mean that if somebody's ox is getting gored, it's the government's if the government had the burden, and even if they didn't know they had it on an element, if they failed to prove it, it's plain when it comes up before the appellate court? No, Your Honor, because I think the burden of proof is important, as Ms. Cloud indicated in her opening remarks. The burden of proof with respect to plain error is on the defendant. The Supreme Court has been clear that the defendant has the burden of proof to meet all four prongs of Rule 52. Understood, but that doesn't seem to me to speak to the point. The point is, when nobody in the courtroom knew what was going on, the government and Johnson wanted to say, it's not our fault, it should fall on the defendant. And the Supreme Court said, no, it falls on you. We're going to judge whether something's plain or not at the time of appellate consideration. Why doesn't that answer the question of who bears the brunt of a shift in Supreme Court precedent? Well, ultimately, Your Honor, the defendant does bear the brunt in terms of demonstrating in prongs three and prong four a reasonable probability of a different result as well as a miscarriage of justice. And in some of the other cases that we've been discussing this morning, like in Nader, you can look back to the context of a trial error. How can you argue for forfeiture, which is effectively what you're arguing for, because there was no objection, when the Supreme Court has said the error is plain at the time of appellate consideration? How do you square that? We're not arguing for forfeiture. What we're saying is the context of the error is key here, which the Supreme Court has said repeatedly. I thought Ms. Klapp just said... If I could just finish my answer, Your Honor. We've analogized these circumstances to invited error. It's a similar context here. In fact, we've asked that there's no error to begin with. And given the context of the error here, that makes it different from the case that you're studying. Thank you. How could we square a categorical rule of always curing the error in these rehab type cases with the court's instruction that pronged floor discretion inherently requires a case-specific and a fact-intensive inquiry where per se rules are forbidden? We would agree, Your Honor, there is no per se rules, because you can't conflate steps three and step four. So even if the court does find that there was an insufficiency here, there still is a separate exercise at pronged floor. And when we do that fact-intensive inquiry looking to the entire record, is the entire record different than the trial record? Well, the entire record here includes, based on the old chief stipulation, the evidence that the defendant foreclosed from being introduced at trial. There was a question earlier in terms of, well, whose fault was it? It was really nobody's fault in terms of trial, but the old chief stipulation is singularly unique in American law. It's the only compelled stipulation. Otherwise, the government could reject the defendant's request and put forward its proof. But what old chief says is that under Rule 403, it's inherently prejudicial. The government cannot introduce any evidence regarding the name or the nature Let's go back to one of Judge Jordan's very first questions. What evidence in the trial record was there from which a jury could have found that he knew the status? Well, the standard is devoid of evidence leading to guilt. It's a stricter standard on plenary review. I know that two courts have found that the stipulation alone is sufficient, but even if it's not sufficient standing alone, it's certainly indicative of the knowledge of status requirement. Here we have not only the stipulation, but also the evidence of subterfuge involving the use of the separate storage facility to store drugs and drug paraphernalia, the fact that he had a secondary vehicle in which he had an arsenal of five semi-automatic firearms and 227 rounds of ammunition. We would point to that and ask the jury to make the inference of knowledge of status, and again, against the devoid of evidence leading to guilt standard. Thank you very much, Judge. Judge, are you okay? Excuse me? Can you hear me all right? A little, a bit muffled and this time louder. All right. In the interest of time, I'll raise any questions you guys might otherwise have. You're deferring as I did? Correct. Yeah. All right. Thank you. Judge Ambrose? Same. Judge Ambrose deferring. Judge Chigaris? Yeah, this is in reference to the career offender issue. Doesn't Kaiser underscore an error in our Hightower opinion? And as your adversary points out, we didn't get into much detail on whether the definition of controlled substance offense was ambiguous before deferring to the commentary. Or based on Stinson, is there a different rule altogether for deference to guideline commentaries? Your Honor, if I'm properly understanding the question, our position is that the case would come out, the Hightower case should come out the same way whether the court is applying Stinson or Kaiser. That said, it is clear in Kaiser and in this court's precedence and the Supreme Court precedence that if the court would come out differently, it should apply Stinson. But as we've endeavored to show in the briefing before this court, proper textual interpretation in line with how the Supreme Court set forth in Kaiser, in other decisions of the Supreme Court and certainly of this circuit, involves fulsome textual and contextual interpretation. We saw that just last week in the Bostick decision. Well, what I was asking was specifically about Hightower. It doesn't seem that we considered whether controlled substance offense was ambiguous at all, right? Your Honor is of course correct. I think it would be fair to say that the Hightower court got the right result but perhaps didn't fully show its work. The Hightower opinion was examining a different question at the outset, examining whether the commission had exceeded its authority in setting forth the definition of controlled substance offense from 994H. And the Hightower court, like most courts to examine that issue, said that the commission did intend to expand from section 994H but that that was consistent with other congressional intent and certainly with the commission's authority. The Hightower court thus, in analyzing the 4B1.2 guideline and concluding that application note 1 was consistent under sentence, implicitly recognizes that application note 1 simply confirms the expansion. Okay. Thank you. Judge Hardiman. A question for Mr. Kravitz. Mr. Donahue argued that the sentence itself may not tell the whole story because the defendant might be pardoned or for other reasons might not serve actually more than a year and a day in prison. Would you agree that in those instances, prong four of AWANA would be satisfied and the defendant would be entitled to remand in a new trial? Judge Hardiman, not necessarily because the defendant ultimately retains the burden of proof even at step four. I would note that some of the circuits have provided a presumption of regularity with respect to state trial courts following their own decisional law or statutory obligations to inform a defendant at the time of a guilty plea or sentence as to the maximum penalty for a particular offense. I'm thinking in particular of the Burghardt decision from the First Circuit involving New Hampshire law. Ultimately, it would be the defendant's burden to demonstrate, based on that presumption of regularity, that the court did not do so in a particular case. In fact, going back to step three, those cases in which defendants have been successful have been either involving underlying state court records or immigration records which show that the defendant was unaware or at least had a strong argument that the defendant was unaware of their knowledge of status. And that means that the actual sentence served is not the key point. The key point is what the crime was punishable by? Not necessarily, Your Honor. It is going to be dependent on the circumstances of each underlying conviction. Okay, thank you. Judge Greenaway. Thank you, Chief. Counsel, I'm concerned about the inferences to be drawn with regard to the knowledge of the defendant. And, you know, this case, there are a lot of prior offenses, but let's assume for a moment there's a less robust case. Maybe it's just one prior felony conviction. We've been talking about exercising discretion within prong four. In the hypothetical that I'm posing to you, is that an instance where you would say that it should go back to consideration in a new trial for a jury, or is the government's position that there are no circumstances under which, given the ruling of Raheith, that it should go back for a new trial? There are certainly no circumstances in this particular case, Your Honor. And all seven circuits who have considered the question, who have utilized evidence either in step three or step four, would reject relief under circumstances where the defendant was convicted of the same offense and served a seven-year term of imprisonment. What's the answer to my hypothetical? To the extent that there was only one conviction, Your Honor, again, I think the answer is similar to what Judge Hardiman, the question that Judge Hardiman posed before. It's going to be dependent on the defendant establishing the burden of proof, either step three or step four, involving the prior conviction that was excluded by virtue of the compelled old chief stipulation. So there'd be no circumstance where there'd be compliance with Raheith required? On plain error, no, Your Honor. Our position is the defendant would have to satisfy both prongs three and prongs four, so it's going to be dependent upon the circumstances of that prior conviction. All right. Thank you. Judge Schwartz. Thank you. My questions are for Mr. Kravitz. The first is following up on Judge Hardiman's point. Are you saying that the proof would either based upon the defendant's knowledge of what his maximum penalty would have been or the amount of time he actually served, either one could demonstrate his knowledge that he has a qualifying status? Yes, Your Honor, that's correct. And that's the position that the First and Fifth Circuits have taken involving prior convictions under New Hampshire and Louisiana law. Thank you. The next question I have has to do with what we consider outside the trial record. Is it your position we can go outside the trial record for both substantial rights to prong three and exercising our discussion to correct an error under four? And if it's on four, what's your authority? Well, Your Honor, I think the question was posed earlier to counsel whether there was any precedent prohibiting Your Honors from considering evidence outside the trial record at either Step 3 or Step 4. The answer is no. The Supreme Court has never prohibited looking beyond the record. They've repeatedly stressed that context is the key. As we refer in our briefing in Cotton, the Supreme Court referenced the PSR at Step 4, and in Illano itself, which involved a potential prejudice in the presence of an alternate juror, the court suggested that the defendant could have produced additional evidence at Step 3 but just declined to do so. So our position is at both Step 3 and Step 4, there is substantial authority, including the Seventh Circuit, to consider the question for Your Honors to consider uncontroverted evidence either with respect to the PSR or judicial notice here of just the name of the prior conviction, given that it was for the same offense. Is it fair to allow such evidence to be introduced if the defendant is not in the record and therefore not presented at the trial? It is, Your Honor, because Step 4, even if we're just confined to Step 4, is not wedded just to the trial record. And, you know, Step 4 goes both ways. And as Ms. Cloud indicated at the outset, here's a situation where the defendant's strategic trial decision precluded the evidence about the name or nature of the conviction that he now claims rendered the evidence insufficient. So our position is, in terms of a miscarriage of justice, here it would be to invalidate the conviction. Thank you. Thank you. For Mr. Kravitz, in the United States v. Xavier decision, Judge Sirica's opinion, we had held that where the evidence at trial was insufficient to prove an element beyond a reasonable doubt, that the failure to instruct the jury on that element did seriously affect the fairness and integrity of public reputation of judiciary. Are you distinguishing Xavier, or are you asking us to overrule it? Well, in terms of instructional error, Your Honor, the Supreme Court is clear in Nader and subsequently in this court's decision in Stevenson that the omission of an essential element in terms of instructional error does not necessarily allow for a plain-error relief at Steps 3 and Steps 4. Counsel referenced sufficiency in some of this court's prior sufficiency decisions, but acknowledged that although ordinarily a defect at Step 3 will result in plain-error discretion being exercised at Step 4, that's not necessarily required. We do not believe that our position here is in conflict with the court's prior decisions in Castro and Jones and Riley and some of the other cases because the situation here is more analogous to invited error. There's no comparable situation involving an old chief stipulation at trial, and given that the Supreme Court has said that you can't conflate Steps 3 and Step 4 but that they're independent exercises, it's necessary still to go through the exercise of Step 4, and here there would be no miscarriage of justice. So, do I understand correctly, the government agrees that a defendant who establishes that the government presented insufficient evidence at trial is entitled to plain-error relief in the normal course? What we're saying is that the court's prior precedents are not in conflict and we're not asking to reconsider Castro or Riley or Jones, but they involved different situations where there wasn't a compelled stipulation, and Supreme Court decisional law provides that the court has to consider all four prongs separately, and as counsel for Mr. Nasir noted, there's no per se violation at Step 3. Those other cases were different. For example, in Castro, it was really a legal defect because the falsehood of that issue was literally true. If I can ask, because time is limited, you keep talking about invited error and strategic trial decision here.  Where it sounds like the government agrees you wouldn't look to new witness testimony at sentencing or new evidence introduced to overcome an insufficiency, even on plain error. So, if this comes down to a distinction based on invited error, how do you reconcile that with Justice Souter making very clear in Old Chiefs that Rule 404B guarantees the opportunity to seek admission of that evidence for knowledge? And how do you reconcile it with our prior case law, specifically United States v. Anders and West Indies Transport, where we held that where a defendant was acting in reliance on current law, we will not apply the invited error doctrine. Well, going back to current law, and again, if it's not invited error, we stress repeatedly it's analogous to invited error, at least at the step four prong. But going back to this particular trial, once Mr. Nasir elected to stipulate, entered into the Old Chiefs stipulation, under our circuit decisional law, we were prohibited from introducing any evidence regarding the name or the nature of the prior conviction, just based on decisional law from this circuit and from the U.S. Supreme Court. So the government would not have been able to unilaterally enter the prior judgment and conviction from the Eastern District of Virginia without running afoul of Rule 403. Thank you, Mr. Kravitz. We're well beyond our time. Judge Ristrepo, I'm sorry. That's fine, Chief. I'll pass. My questions have been asked. Thank you. Thank you very much. Judge Peebus. Thank you. Ms. Cloud, so let me ask you about the rule of lenity. Assuming that the rule of lenity survives Stinson, which Stinson doesn't speak to and no later case does, doesn't lenity require either that we find the guideline ambiguous to avoid a due process issue, or if the guideline is ambiguous, we construe it in Nasir's favor before we get to? Any kind of deference? Your Honor, my understanding of the rule of lenity in Supreme Court case law in particular is that it only applies when there is a grievous ambiguity. And my colleague, Mr. Donohue, certainly noted that. There's no case law suggesting that a court should apply the rule of lenity prior to applying agency deference rules, including the Kaiser opinion itself. So if this court finds that 4B1.2 is ambiguous, then it should then employ the Kaiser framework of steps two and three to determine whether the agency's interpretation falls within the zone of ambiguity and whether it is a fair and considered judgment deserving deference, which we think the answer to both of those questions is clearly, yes, it is a reasonable reading, and yes, it is a fair and considered judgment. And Mr. Nasir makes no argument to the contrary. Thank you. Thank you, Your Honor. Thank you. Judge Meade. Thank you, Chief. Mr. Kravitz, a question on line drawing. I don't think there's any serious doubt here that the holding in Rahif means that Mr. Nasir did not have a jury determined behind a reasonable doubt the guilt of every element of the crime that he's been charged. There are not many cases like this that are going to exist for subsequent review, either direct or collateral. I wonder why it is we should attempt to wade into this very deep and difficult question of how and when to plug an omitted element in order to sustain a conviction versus simply relying on what the Constitution requires. What is the balance on which you would suggest that we put on our decision so that we don't have to answer that broader question but could still provide you the result that you think is compelled under our decisions? Your Honor, I don't have off the top of my head how many cases are still pending given the nature of this error. I know that in the last fiscal year there were approximately 11,000 prosecutions involving Section 922G, so it's an important decision. Regardless, an important decision for this Court to address the evidence that defendants required to meet at Prongs 3 and Prongs 4. As we've set forth in our papers, we would ask the Court to find that there's not a reasonable probability of a different result in the context of the Old Chief stipulation. Also, in this particular case, especially where the defendant was convicted of the same underlying offense in the Eastern District of Virginia, that in this particular case the miscarriage of justice would lie if the Court would vacate the conviction and send it back for a new trial. Thank you, counsel. Thank you. Judge Phipps. Yes, good morning. If Mr. Nasir objected on a Rehoff sort of argument and that was denied at the trial level, we wouldn't be here on plain error review. We'd be here on some other standard of review, clear or harmless error, but a less demanding standard of review in Mr. Nasir would likely be in a far better position as far as vindicating what he wants to vindicate on appeal. I guess my question here comes down to what separates plain error in many ways from other standards of review is this Prong 4, and that involves an exercise of discretion by an appellate court. I guess I'd like to hear from you as clearly and as concisely as possible why I take it it's your position that we shouldn't exercise the discretion that we have here on Prong 4. Why shouldn't we? Your Honor, the Court should not exercise discretion because it should not permit a defendant to pursue one course at trial and insist on something different on appeal. As Judge Porter indicated, to use the old chief stipulation as a sword at trial, as a shield at trial and now a sword on appeal. The defendant received the benefit of the old chief stipulation at trial. The information that he wanted to keep out from the jury, the fact that there's prior conviction, did not go to the jury. Now we're talking about information that is categorically more prejudicial. The fact that he was convicted of the same offense and served seven years imprisonment, acknowledged all of that during the sentencing process, and also we have the judicial notice of the judgment of conviction. So that, with respect to this particular case, would be my answer. Thank you. Thank you. Judge Sirica? My question has been asked. Thank you very much, Judge Sirica. Judge Rendell? A quick question for Ms. Cloud. What do we do with the fact that 4B1.2a, definition of crime of violence, explicitly include in Co-A crimes, while subsection 2B does not? Doesn't that show an intent and specifically an inconsistency? Your Honor, respectfully, no, because this court has already analyzed a very similar question with respect to the United States v. Daniels opinion, in which the court was examining the very, very analogous provisions within the Armed Career Criminal Act. The Armed Career Criminal Act has almost verbatim the same definition for a part of the violent felony offense, and then a serious drug felony is defined very comparably to controlled substance offense. And this court, like many courts, reject the idea of expressio unius in that context between those two definitions, and we would say that the same reasoning should apply here. There's no evidence that the Sentencing Commission was intending to exclude in Co-A offenses, which they absolutely have said since 1987 that, in fact, they intended to include them. All right. Thank you. Thank you, Your Honor. Thank you. Thanks very much. That concludes the government's presentation. We will now move to rebuttal, and I'm going to exercise the little bit of discretion that I occasionally have, and that is to say that rebuttal is not due because I'm going to accord Judge Jordan first and Judge Porter second an opportunity to ask further questions, so if you'd proceed, please. Thank you, Your Honor. All right. Mr. Donohue, you heard repeatedly from Mr. Kravitz that this was, in effect, a case of invited error, that the government was compelled to enter a stipulation, and that, as Judge Porter put it, this outcome you're asking for would allow the defendant to use that stipulation as a sword, not just as a shield. I'd like you to respond to that specifically. Your Honor, there was no invited error and nothing analogous to invited error in this case. Mr. Nice here did not tell the government, no, don't prove knowledge of my status. He did nothing to prevent the government from proving knowledge of status. He simply invoked his right under Old Chief to prevent the precise name of the offense from being introduced, which is, of course, Old Chief is not a controversial decision. It's a necessity. It's a fair trial. So all he did was avail himself of that right. He didn't invite the government not to prove knowledge of status. He kept out the evidence that now the government thinks, oh, that would have been a nice way to prove knowledge of status. And your colleague also said there's no Supreme Court case saying you can't look beyond the record when it comes to Prong Four. I think you might have covered this in your opening presentation, but can you respond to that assertion and the assertion that, look, all these other circuits are doing it. Jump in. The water's fine. On the first point, I think I would say there's neither a Supreme Court case approving recourse to extra record evidence for a Prong Four nor disapproving. The Supreme Court hasn't spoken on it, and I think the most thorough reviews are in the district court Montgomery and Sepulveda cases, which I believe say that. The Supreme Court precedent has not addressed it as one of your honor's status in an unusual situation. As far as all the other circuits jumping in, I'm hard-pressed to attribute that to anything other than a fear of opening floodgates. Judge Porter? In Gonzalez-Morales, the Supreme Court made a distinction between cases that went back for resentencing, as in that case where there was a guidelines calculation error, and cases that have to go back for a new jury trial, which I'm reverent in, and said that, you know, that we exercise our discretion of Prong Four sparingly and in exceptional circumstances, and seem to suggest that that's especially true where the cost is low because it goes back for a resentencing. This one, of course, would have to be retried in a jury trial. How do you respond to that observation? Well, I agree that with Gonzalez-Morales, it's true that distinction, and it bears on the analysis. But for one thing, it would just be a trial of one charge here, incidentally, not the main thrust of the trial, which were some other charges. And B, while it may be that a court can more readily exercise discretion when there's only sentencing error, I don't think Gonzalez-Morales intended to erect some new and superb barrier when there is trial error. Okay, Mr. Folger? You have a minute and 35 seconds to respond on anything you'd like to. Knock yourself out. All right, I guess I have three somewhat seriatim points for me. I want to offer an example of what maybe would disentitle a defendant to relief on prong four, even if everything else was the same. How about if a defendant disingenuously ensured the non-appearance of a critical government witness on the one day that that witness was available to testify? And putting aside that that might be a crime of its own, just in the trial it affected, maybe in that case you'd say, you know what, yeah, there was no sufficient evidence, but that's because you kept it from happening. And that's a bit analogous to what's here again, because all that the senator did was exercise his right without even preventing the government in any way from introducing knowledge of status, simply not introducing the knowledge of status that comes most readily to mind. The other prong four point I would just like to remind the court of is the United States' D'Castro v. Decision. In that case, the evidence showed that a Philadelphia police inspector deliberately attempted to lie to federal agents in connection with an informant. It turned out his words were literally true. Did that stop the court from granting relief on prong four? No, because the facts weren't proven as they have to be under the beyond the reasonable doubt standard. I thought your point about prong two and the Johnson decision and the burden being on the government when a new rule is announced on appeal is novel and insightful. Thank you, Your Honor. Thank you very much, Mr. Donahue. Thanks to all of counsel. This has been a challenge for all of us and an unusual situation that we all face that hopefully will not continue much longer. Who knows? Before we recess, I want to pay special attention to our court family, Eugene, who is here solo. He was supposed to have some assistance, and his assistant was killed, but he's also here to address this difficult fact situation. So a thank you for your answer to the call I made today. We will be taking the case under advisement, and immediately upon the call being vacated, we will take on the discussion of this case, application of this case. So please stand by. Thank you very much, counsel.